I'm very grateful to be sitting here in Wilmington and thankful again for Chief Judge Connolly's kindness in allowing us to use this courtroom. We'll go ahead and call our first case for today, Antonio White v. Superintendent Rockview. Counsel. Good morning, Your Honors. Dean Beer v. Antonio White. I'd ask the court to reserve two minutes for rebuttal. Your Honor, the question before this court is that if a pro se incarcerated defendant cannot rely on the judge's opinion and confirm not once but twice by the clerk of the court of the county where he was tried, what more can a defendant rely on? Okay, we're well familiar with the facts. And Mr. Beer, let's get into what was just submitted yesterday. We haven't granted the motion, but I expect we will for a supplemental supplement to the appendix from the other side. We granted your motion in the same vein. The commonwealth has submitted something which appears to the point of which seems to be, hey, he knew or certainly should have known because he submitted something to the court that showed within the document the correct date for when the Supreme Court had taken the pertinent action, the triggering action. Yeah. It's your first chance to respond to that. Go ahead and respond. And if I can just supplement that. What was filed yesterday, obviously, and what he this is where he sought appeal to the Pennsylvania Supreme Court. And he says that the time to start counting was when the Pennsylvania Supreme Court supposedly denied the direct appeal on March 16th of 2015. But he attached the Superior Court non-presidential decision, and that decision is dated February 13, 2019. So it's six months before he filed for his AEDPA petition here. And it said in that page four on February 19, 2015, our Supreme Court denied a petition for allowance of appeal. So one could argue that he had before him six months before he actually filed notice that the Supreme Court had denied on direct appeal his appeal on February 19, 2015. Yes, sir. I understand that that's the way it is. Excuse me. May I note that in this document that was filed last night by the government, that they're also on page two of the statement of the case. It states that on September 11, 2014, a petition for allowance of appeal was filed with the Pennsylvania Supreme Court. It was denied on March 16, 2015. So I don't know that I'm a little concerned that the government refers to the February date, but does not refer to the fact that the March date is also included in that filing. You're correct, Your Honor. In this filing, in no filing that Mr. White ever personally filed or written, did he refer to the correct Supreme Court date? He was always under the impression, based on the judge's opinion in the district court, that that date of March 16th was the correct date when his appeal was filed. Okay. But here's the thing I think we're trying to get you to respond to, if we can, Mr. Beer. The Commonwealth is saying, look, he had good reason to know. Now, it's true that in the cover filing to which he attached the document that Judge Ambrose gave greater detail about and that I was asking you about, he says the March 16 date. But the February date is the correct date, and it's in that attachment. So I take it that the Commonwealth's point is, although they'll be arguing it and they've argued somewhat around it in their briefs without that document yet in the appendix, that this shows he was on notice and a diligent person would have noticed this. The idea that he didn't notice it, we understand he may have been under that impression. But I take their argument to be the fact that he didn't pay attention to this shows a lack of diligence. Respond to that, please. Your Honor, this court has never required maximum diligence. It doesn't require a defendant to overturn every stone. And maybe in hindsight, as the court said in Munchinski, in hindsight he may have done something different. But in this situation, Your Honor, he had numerous documents. And after that date of March, the Superior Court opinion comes out on February 13th of 2019. He then goes back to the court, the Delaware Clerk of Courts. And in our appendix, we attach a letter that's dated April 30th of 19, where he asked the court, I'm looking for my PCRA dates regarding my appeal. And he says, I need the docket again. And they resend him that same docket with that court date. So again, he was able to rely on that even after the Superior Court wrote their opinion. And again, for a pro se defendant to possibly understand that distinction at that time buried in a Superior Court opinion, I don't think that that diligence that this court requires is there. I think that he was more than diligent under the case law before these courts. And he did everything he possibly could to come up with the correct date and file his courts on time. Well, assume you thought you were correct about that. Speak for just a moment about the extraordinary circumstance piece of the test for equitable tolling. Your opponents point to Williams v. Beard. It's an NPO, but they're saying it's pertinent and that it shows that an alleged error in construing post-conviction motion as a PCRA petition rather than a direct appeal is not a ground for equitable tolling. Is that got traction? Should we be concerned about the argument that they're making? No, Your Honor. The court is, in many cases before this court, errors by a court have been found to be extraordinary circumstances, implicit as well as explicit. You have to remember, in this situation, this was an affirmatively misleading. In many cases, the courts have just implicitly misled, and this court has found that to be equitable tolling. In the Brinson case, the court told the client to go back to state court to file a Batson claim, not knowing that they already were past the deadline. So in many situations, Your Honor, even when a court does the right thing, and you're in Coley, the court had a mixed petition. It was before Rhines was decided, and the court dismissed the whole petition and told them to go back to file a petition that was exhausted. The court said that was an unintentional misleading of the defendant, but it still rose to the level of extraordinary circumstances. This is not a case of attorney mistake. It's a clear case of affirmatively misleading the defendant as to what he needed to do to have his habeas petition heard. And it's a direct line to that, Your Honor. Do we have enough facts to decide this on our own? Is this the sort of thing, whether he exercised reasonable diligence, whether the circumstances were truly extraordinary, are these fact-driven things which ought to go back to the district court for some further fact-finding? Or is there enough for us to make a determination on this? Your Honor, I do believe that today in front of this court, you have enough to make that decision. However, I do understand that if the court feels that you do not have sufficient facts in front of it, that we would welcome to go back to the district court. The district court didn't address the diligence wrong, did it? No. It found that he was not diligent for failing to go back to the Supreme Court and get the Supreme Court docket. I think that that's what Judge Prater decided, that he was not diligent going back to the Supreme Court. But I do believe that this court has enough evidence in front of it. I think the fact that a judge, in his opinion, misled the defendant alone would be extraordinary circumstances because once you start at a wrong date… Just to be clear, it wasn't the district court that got this wrong. It was the district court. Apologize. PCRA court. It was the trial court. It was the trial court judge who, in addition, had all the documents that the Commonwealth has filed saying that our client was on notice as to the correct date of the Supreme Court. And so an incarcerated pro se defendant would go by what the judge told him rather than what anybody else told him. Judge Roth, any questions? I have nothing further. Thank you. We'll have you on rebuttal and we'll hear from the Commonwealth. Good morning, Your Honor. It's Catherine Keefer on behalf of the Commonwealth. And I want to start by being very clear about what Mr. White is asking this court to do. He's asking this court to create a rule that even where a defendant knows and is in possession of a document that has the correct date, any garden variety mistake made by any court prior to that time is enough for equitable tolling. And this is different. I'm sorry. I'll stop you right there. Please do. Because that isn't what he's asking. He's not saying when you say when a defendant knows, his assertion is precisely to the contrary, Ms. Keefer. He says he didn't know. His subjective knowledge was that the March date was the pertinent date. He was not conscious of the February date being the pertinent date. So you start off with a premise which is in print and at the podium directly refuted by the other side. So it doesn't help or advance this for you to make that the premise of your opening. So why don't you start with where they are and meet their argument. Their argument is he never knew. He always believed what the Commonwealth court told him. And, in effect, what he's saying is, is it really a sensible rule what the Commonwealth is asking for, where a pro se prisoner is held to a higher degree, a higher standard of knowledge and understanding, than the courts of the Commonwealth themselves have demonstrated. Why don't you meet that argument? Of course. I'll start by saying we don't look at his subjective thinking in response to objective evidence. There was direct evidence that he had both documents. Ross says that we make a, that it's a subjective test because we have to determine based on the facts of each case, but reasonableness is always objective. Subjective test. Subjective in that you can't have bright line rules, and you must therefore look at the facts and circumstances of each case. There cannot be just a statement, if X, Y, to every question of equitable tolling. It's subjective because it depends on the facts. It's reasonable, right? It's reasonable. It's what's reasonable for that person to think. So in that sense, maybe it's subjective, but you can't accept somebody's subjective belief if they've got the evidence straight in front of them and they're just clearly making themselves blind to it. But if it's reasonable diligence and not maximal diligence, as Mr. Beer puts it, why wasn't he reasonably diligent to accept what the DACA said, to accept what the court said, to accept the things that were being told him by official sources? Because the U.S. Supreme Court says it's not. They said last year in Martin v. Johnson that failure to take steps to confirm information is fatal to a claim of reasonable diligence. So if the court tells him it's March and the doc says it's March, that it's not reasonably diligent for him to accept it's March, he's supposed to go and do some extra digging because you can't believe what the Commonwealth says. He's supposed to be a skeptic is what you're saying. I'm saying when he has two pieces of paper in front of him and we know that he did have conflicting dates, you cannot sit on your hands and then later claim that you were diligent. I think you're also hard-pressed. Was the Commonwealth court diligent? Was the Commonwealth, the Commonwealth court? The one that said that March date was the date. I think mistakes like this happen. How this happened, Your Honor, is that the PA Supreme Court issued its order dated February 19th. They then forward that order and the actual trial file back to the Court of Common Pleas. There's a stamp, like an ink stamp on the order that the Court of Common Pleas received that says March 16th, 2015. That piece of paper then goes to some other person in the clerk's office who does data entry, and that person mistakenly used the stamped date rather than the order date. The question was, was the Commonwealth court diligent? I think that you can still have garden variety mistakes and be diligent, yes. Okay. Then why isn't this guy's garden variety mistake just as diligent and just as acceptable as the Commonwealth? Because the Court of Common Pleas isn't asking for equitable tolling. The Court of Common Pleas doesn't have the burden of establishing that there was an extraordinary circumstance, and I'm hard-pressed to see how there was one when he had both dates in front of him, or that he was diligent when he did absolutely nothing beyond sitting there and then later claiming. Beyond listening to what the courts told him, why don't you speak to Ursinoli, which says a court's action, even if legitimately when taken, may constitute an extraordinary circumstance, warning equitable tolling if it later operates to prevent a plaintiff from pursuing his rights. But it didn't operate to prevent him from pursuing his rights, Your Honor. It just didn't. They didn't tell him, as in, say, other cases that he cited, if you do X, then your claim will be perfected. If you do Y, then you'll be timing. They made no if-then statement. They simply were relating the procedural history of the case. The misstated date had nothing to do with the actual substance of the legal analysis. Well, it had something to do with what his deadlines were, right? I mean, it had everything to do with that. Your whole argument is he blew it, he should have dug deeper, he should not have believed what the court said to him because there was another document somewhere that was going to tell him the right thing, and if he'd dug deeper, he would have known. That's the gist of your argument, right? It is. Okay. It's fair to say, isn't it, that if you trace out the timeline here, that, in fact, it shows he was endeavoring to be diligent because if he had gotten the date, if he understood the February date, he could have, and in all likelihood would have, filed the two weeks earlier that it would have taken. Would you agree with that premise? If he had known that he would have tried to file timely? Yeah. I mean, doesn't, if you look at the timeline associated with this, it shows him attempting to hit his marks, doesn't it? It shows him attempting, except that in this case he had the information and miscalculated. That's not my question. You can get to that if you want, Ms. Keefer, but answer my question first. Isn't it a fair reading of this record, isn't it indeed the most fair reading of this record, that he was trying to hit his mark? Yes. Okay. Yes. All right. So, really, your argument and the whole of your argument. Misrepresentation or, I'm sorry, did you hear what I was saying? That there's no indication at all by him of misrepresentation or trying to game the system by filing the pleading out of time. He was operating according to the best information that he received and that he received again in the future when he asked for the docket and he was given the same misinformation. And it was no attempt at avoiding anything that he was trying to do. As Judge Stewart said, he was trying to get everything done properly. If I'm understanding your question correctly, Your Honor, we are certainly not asserting that there was any trickery or attempt to deceive the court or anyone else, but we would suggest that there was negligence that is fatal to his claim. I'm not sure how you can square that with the acceptance, which you've rightly done, that there wasn't negligence on the part of the Commonwealth Court. There might have been a mistake, but it's not something you would call negligent. But let's leave that aside for a second. You have repeatedly called this typos in your briefing. Yes. Now, I just have a hard time with that because, you know, typo is short for typographical error. I hit a three when I meant to hit a four, or I hit a Y when I meant to hit an X. This is a wrong date. This is an incorrect date, and it's in more than one place in the official record. So this isn't the typographical error that was put forward to him by agents of the Commonwealth. It was erroneous information, correct? That's not a typo. That's just flat-out wrong information. It was mistaken information because of a data entry error. And we were using the phrase typo in that there was no intent to deceive. There was no malfeasance involved. It was simply a man sitting at a computer who inputted presumably the ink-stamped date on the order that came from the Supreme Court rather than the date that the Supreme Court issued the order. The first thing you would look at, I'm looking at the Court of Common Pleas, Delaware County, criminal docket, that says Petition for Allowance of Appeal Denied, Supreme Court, 3-16-2015. Correct, because some person sat and looked at the piece of paper that had the ink-stamped date on it instead of looking at the date that the court issued the order. If you get that, what would you think is the date the time starts? If I only had that sheet of paper, I would think that the time started on 3-16, but he didn't have only that sheet of paper. He also then had the Pickwick Court decision, which also referred to 3-16-2015. I'm sorry, which court? PCRA. The PCRA court opinion, yes, repeated that same mistake. However, he had the Superior Court opinion, which had the correct date. His own PCRA petition had the correct date. Both of the Commonwealth's responses to the PCRA petition had the correct date. The Supreme Court order had the correct date. The Supreme Court docket had the correct date. The interesting thing is your argument has shifted a bit this morning. It has. Because page 17 of your brief, you argue that White can't show extraordinary circumstances because the state courts did not intentionally or actively mislead him and did not purposefully communicate to him in an attempt to deceive him. I'm not aware of any such case that exists, and now you're saying, well, okay, I'm not going to say he intentionally misled people. He just was negligent, and therefore he should lose. It's kind of changing, isn't it? Well, the argument has changed a bit because the documents came into our possession last week, and I was only able to go through the boxes. No attorney wants to be in a position of saying that there's something that there isn't, especially a prosecutor. And so although I knew he had filed a pro se aliquot or petition, I couldn't say what it said until our copy of it was actually found, and to say that Delaware County's recordkeeping is less than ideal is an understatement. So we found it when we found it, and we're putting it before this court, and presumably it has carried through the state court record, which this court received months ago. I'm sure I can go double-check that they're the same. Yeah, you're, in a sense, you're advocating admirably for your claim. Don't get me wrong. But aren't you really making the other side's case? Because what you're saying is the courts make mistakes. These are mistakes that reasonably good-hearted, sensible, hard-working people can make, and that the Delaware County makes mistakes. The Prosecutor's Office makes mistakes. And these are reasonably diligent, good-hearted people, and they just make mistakes. But when it comes to a guy in prison with limited access to a law library acting on his own, he makes a mistake, and, man, that's not reasonable diligence. That's just flat-out negligence, and that guy should not even be heard. This argument, let's remember, this argument isn't about whether he gets out of prison. It's not does he get ultimate relief. What we're talking about here is one thing. Does he even have the chance to have the merits of his argument considered by the district court? Why isn't he in at least as good a petition as the good-hearted, hard-working people in the clerk's office in Delaware County or the good-hearted, hard-working people who are writing opinions as Commonwealth Court judges or, frankly, the good-hearted, hard-working people in your office who couldn't get their hands on this stuff until last week? Why isn't he in at least as good a position as that and be given the benefit of saying, you know, it is pretty extraordinary to be told the wrong date twice in official documents, and it is clear that he was operating in good faith on those dates, so maybe, just maybe, that should be reasonable diligence and constitute an extraordinary circumstance that lets him have his case heard on the merits. I think because, Your Honor, each of those parties is going to have to suffer with the consequences of the mistake that they made. I'm in a weak position. Nothing for the others, but for him, it's he never gets the merits of his argument. And that's because he's the one here trying to excuse his lateness, and it's just a different setting. I think we have to remember at base he needs to prove that there were extraordinary circumstances, that he was diligent, and that the extraordinary circumstance itself caused, prevented in some way, kept him from filing. I don't see how that's possible when he had the date in front of him. If you were an attorney in private practice, forget whether it's a criminal case or a civil case, and you look at the docket and you see the March 16 date for an appeal, and, in fact, the time started February 19, and then you see a court opinion that says the same date, and you then wait a little bit of time, and you file after the 19th of a particular month, and so you're late if the date is February, and all of a sudden somebody says to the opponent, hey, did you know that the date was February 19? And the first thought as a private attorney is, oh, my God, I'm going to be accused of committing malpractice, and you are scared out of your mind. Indeed. And put yourself in this person's position who's trying to, you know, whether he has a good case or not, it's even more serious than that. So what you're arguing for is too bad, so sad, he could have found it, he should have, I think, on page one of the pages on your brief, you said he should have been prompted to, quote, seek clarity, close quote. That seems like a mighty high heel for somebody to have to climb in this type of circumstance. Your Honor, I'd like to answer your question. I want to double check. I'm over time. Go ahead. It is high, and I think there's a reason it's high. Ethical tolling is supposed to be granted in rare circumstances where causation has been proved. How often do the courts blow it like this? I have no way to say that. But wouldn't you say it's pretty rare? I would say that. You're not doing it all the time, are they? No, they're certainly not. Okay. Okay. No, I mean, I don't think any of us walk around saying I can't trust anything I read in any opinion or in any docket. But to get back to Judge Ambrose's question, if I were a private attorney in this situation and I saw a docket printout, I'd probably go look at the original order, and I'd probably, being a good attorney, read almost all or all of the documents involved in a case, and then I would see the inconsistency, and then I would be darn sure if I knew my case being able to get through the front door of the courtroom depended on me filing on the right date, I'd make darn sure I got it right. Well, and if you had relied on two official documents and gotten it wrong, don't the civil rules of procedure provide for an application, excuse me, the federal rules of appellate procedure apply in a way that allows you to say, you know what, I've got good cause, good cause for my error. The court system misled me twice. Give me an extension. And the rules provide for that. This is roughly the same thing. It is. I mean, I would say that that hypothetical and equitable tooling here are fairly similar, and I would say that he doesn't have good cause. If he is a pro se petitioner, can have a sheet of paper in front of him that has the correct date and do nothing to verify an inconsistency, he has not been diligent. Okay. Okay. Thanks so much for your argument, Ms. Keefe. We'll hear back from Mr. Beer now on rebuttal. Thank you, Your Honors. I'd like to first say that is exactly what we were asking for, the opportunity for Mr. White to have his case heard, his habeas petition heard. That is exactly what we were asking this court. We understand what you're asking. I understand. Thank you, Your Honor. But I'd like to address Judge Ambrose's question regarding the diligence that he pursued. What the Commonwealth is saying to him, he should have gone back to the Supreme Court to get the court docket. But Mr. White was diligent, and every time he went back to a court, he went back to the trial court. And what they're asking him is to be perfect in where he went to. And this court in Yersinoli said that that fact that he didn't do something wasn't a lack of diligence, it was a lack of legal knowledge. And that's why I submit to this court that whatever Mr. White did, he was clearly diligent, but he lacked the legal knowledge to know which court to ask for the correct date. And he went back to the trial court, which is more than diligent. Anything else you want to add? No, Your Honor. Thank you so much. Okay. Thanks. We've got the matter under advisement.